No. 38,809

STATE OF KANSAS, *Appellee*, v. WALLACE EDWARD (ED) CHAMP, *Appellant.*

(254 P. 2d 819)

Opinion filed March 7, 1953.

*I. M. Platt,* of Junction City, argued the cause, and *Charles I. Platt,* of Junction City, was with him on the briefs for the appellant.

*Lee Hornbaker,* county attorney, argued the cause, and *Harold R. Fatzer,* attorney general, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: The defendant appeals from a conviction in a criminal case.

The information charged appellant had unlawfully and feloniously, on purpose and with malice aforethought, shot at Betty Turner and Edgar Turner with intent to kill contrary to the provisions of G. S. 1949, 21-431.

Neither of the Turners was injured. The material facts are not in dispute here. A few of them, however, will be related to disclose the background for this prosecution.

Betty and Edgar Turner, the assaulted parties, were married in 1948. Turner is an army sergeant. At the time of trial in March, 1952, he had been in the service eight years. The Turner home was in Junction City. They had two children, a girl and a boy.

Before Edgar left for Korea in September, 1950, he and his wife went to a beer parlor in Junction City where appellant was working. The Turners ordered beer. It was here that Betty met the appellant. Immediately after Turner left for the service Betty and appellant began dating. Soon thereafter they lived together. Edgar returned on an emergency furlough in April, 1951, while Betty was living with appellant. Edgar, Betty and appellant· discussed their affairs together. Thereafter Betty and Edgar lived together about eight or nine days after which time Betty lived with appellant. Edgar remained in Junction City about fifty-eight days. Betty returned to live with her husband and some time thereafter Betty and appellant lived together.

Edgar returned to Korea in the latter part of May, 1951, where he remained until October, 1951, at which time his term of enlistment expired. He returned to Camp Carson, Colorado, and reenlisted in November. He obtained a re-enlistment furlough of thirty days. He arrived at Junction City about November 11, 1951. He and Betty decided to go back to Camp Carson during his furlough. They packed their belongings on November 12 preparatory for the trip in a car.

At about 1:00 p. m. on November 12, 1951, the Turners started to leave for Colorado. They planned to go by way of Missouri and Oklahoma. When they arrived at the intersection of Jefferson and Eighth street they stopped on the east side of Jefferson street by reason of a red light. Appellant was in his truck traveling south on Eighth street. Appellant stopped on the north side of the intersection and fired three shots from his shotgun. The first shot appears to have been aimed into the sky. The other two shots both may have been towards the Turner coupé. At any rate the shots scattered somewhat along the north side of the coupé ranging from the back of the door to the back end of the right rear fender, most of the shot having struck it about the middle of that fender. Both of the Turners were in the front seat of the coupé. Appellant, in substance, testified:

He did not know the Turner car was at the intersection until he drove up as the light turned against him; he had been warned Turner was going to get him; he thought Turner was starting to open the door of the coupé to get out so he shot in order to frighten him and make him stay in the car; when he finished shooting he turned west and drove to the place of his residence in Junction city;

he was a logger and had prepared to examine some logging work that day and always carried his shotgun on such occasions in order to shoot game while he was in the timber; he had a box of shells he could have used had he intended to injure the Turners; he did not intend to kill or harm either of them or he could have done so; he did intend to frighten them.

There also was testimony of other defense witnesses that appellant was an excellent marksman. There was testimony in the state's case in chief which disclosed, or tended to show, Turner had said prior to the trial that appellant really did not try to harm him or his wife but wanted to scare them.

The sole issue presented on appeal pertains to the exclusion of testimony offered by appellant. The shooting incident occurred November 12, 1951. In the state's case in chief it introduced evidence by the witness Turner that appellant had come to Colorado after the shooting and on December 8, 1951, his wife had left with appellant and a Sergeant Allen and he had not heard from his wife since that date. To this testimony appellant objected on the ground it occurred long after the offense charged and it had no bearing on the issues. Appellee contended the evidence was competent on the ground it disclosed appellant's guilty conscience. The evidence was admitted.

On cross-examination of Edgar Turner he identified the handwriting of letters to appellant to be that of his wife, Betty. The letters were written to appellant from Missouri, Oklahoma and Colorado prior to December 8, the date Betty Turner left Colorado. Three letters were offered in evidence by appellant as a part of Turner's cross-examination for the purpose of explaining the reasons for appellant's presence in Colorado, which indicated Betty loved him and invited him to come to Colorado, the purpose of the evidence being to counteract appellee's contention that his presence in Colorado disclosed a guilty conscience. We need not encumber the record with the letters. It is sufficient to say they established, or tended to support, appellant's contentions. Appellee objected to their admission on the ground they did not tend to prove or disprove any of the issues in the case, they were not the best evidence and that if appellant wanted Betty to testify he should have had her present at the trial. Appellee's objection was sustained.

On direct examination of appellant he testified he went to Colorado for the reason Betty had been writing to him from Colorado.

He identified the handwriting of the letters he had received from her while she was in Missouri, Oklahoma and Colorado. They were offered in evidence. Appellee objected thereto on grounds previously mentioned and the objection was sustained.

Appellant was entitled to the benefit of any explanation he might have tending to show the reasons or motives for his presence and conduct in Colorado for the purpose of counteracting the state's contention he left the state of Kansas by reason of a guilty conscience. The letters were competent for that purpose although not to prove his innocence of the offense charged. (*State v. Sparks*, 79 Kan. 548, 99 Pac. 1130; Underhill's Criminal Evidence, 4th ed., § 254, p. 476; Kelley's Criminal Law and Procedure, 4th ed. (Lee), § 289, p. 246; 22 C. J. S., Criminal Law, § 625 e., p. 961; 20 Am. Jur., Evidence, § 296.)

It, however, does not follow the exclusion of testimony constituted reversible error. On appellate review we are no longer concerned with the original charge that appellant on purpose and with malice aforethought and with intent to kill shot at Betty and her husband. The jury did not find appellant guilty of that charge. On the contrary it adopted appellant's version of the incident and convicted him of a lesser offense included within the charge contained in the information. It found appellant guilty only of endangering the lives of the parties assaulted under circumstances which would constitute murder or manslaughter had death ensued. (G. S. 1949, 21-431.) This is the verdict and judgment appellant seeks to reverse. This verdict was established by appellant's own testimony. All the letters of love and affection received from Betty and her invitation to appellant to come to Colorado could not possibly have constituted a defense to any element of the crime for which appellant was ultimately convicted. The exclusion of the letters, therefore, did not prejudice appellant's substantial rights. Under these circumstances this court is not permitted to reverse the judgment. (G. S. 1949, 62-1718.)

The opinion might well be ended at this point. We, however, pause to observe also the court admitted other testimony from appellant's witness, Sergeant Allen, who testified he and not appellant had taken Betty from Colorado in his car after she had pleaded before him and appellant that she be removed from Colorado by reason of fear for her safety with her husband. From this testimony and the further testimony of appellant which was ad-

mitted, namely, that he went to Colorado by reason of the letters he had received from Betty, we think the jury undoubtedly obtained a reasonable explanation for his presence in Colorado without reading the substance of Betty's love letters. There is nothing further in the case requiring our attention.

The judgment is affirmed.